ESTATE OF GEORGE W. SWEENEY, ALICE S. MERGENTHALER, ET AL., EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1955.   Promulgated October 31, 1944.

*H. Kennedy McCook, Esq.,* for the petitioner.
*James C. Maddox, Esq.,* for the respondent.

DISNEY, *Judge*: This proceeding involves the redetermination of a deficiency of $51,817.64 in estate tax. The issues are whether the value of the corpus of a trust created in 1933, of which decedent's daughter was named as grantor, and a trust created by the decedent in 1923, are includible in the decedent's gross estate. We shall, for the sake of clarity, treat the two trusts separately.

### FINDINGS OF FACT AS TO TRUST OF 1933.

Petitioner is the surviving executrix of the estate of her father, George W. Sweeney, who died December 13, 1940. The estate tax return was filed with the collector for the fourteenth district of New York.

On December 17, 1927, the decedent transferred to the Harriman National Bank of the City of New York, in trust, certain securities, with directions to pay the income therefrom to the grantor for life, and upon his death to distribute the corpus to his daughter, Alice S. Mergenthaler, if then 55 years of age; if not, to pay the income to her until she reached 55 years of age and then pay over the corpus. In case Alice S. Mergenthaler predeceased the grantor, without surviving issue, the grantor had the power to name a beneficiary in her place, by a written instrument filed with the trustee or by a provision in his will, and Alice S. Mergenthaler had power, exercisable by her last will, to designate a beneficiary in the place of her issue in the event she died without issue. The grantor and his daughter had power to terminate the trust by their written consent and designate the person to whom the accumulated income and corpus should be delivered.

The grantor and his daughter revoked the trust on July 3, 1933, and pursuant to their direction the property of the trust was delivered to the daughter. The revocation was made on account of the closing of the Harriman National Bank of the City of New York, on March 13, 1933, by order of the Comptroller of the Currency and its inability thereafter to function as trustee of the trust.

On July 3, 1933, Alice S. Mergenthaler executed an instrument dated June 30, 1933, transferring to the Fifth Avenue Bank of New York, in trust, the property received under the trust of December 17, 1927, with directions to distribute the income to her father for life. Upon his death the estate was to go to Alice S. Mergenthaler, if 55 or more years of age; otherwise, she was to receive the income until she reached such age and then be entitled to the whole estate. In the event Alice S. Mergenthaler predeceased her father and left issue, upon his death the income was to be paid to her surviving issue and the issue of any deceased child until George O. Mergenthaler reached 30 years of age, when the estate was to go to the issue of Alice S. Mergenthaler and the issue of any deceased child. In the event Alice S. Mergenthaler

died without issue, the decedent had power to name a new beneficiary by a written instrument filed with the trustee or by a provision in his last will. Provision was also made in the instrument for disposition of income and corpus in case the daughter survived her father but died before attaining the age of 55 years.

The trustee was required to obtain the consent of the father and his daughter to sell or dispose of securities in the trust. During their lifetime, the grantor and her father, acting jointly, could revoke the trust and designate the distribution of the estate.

The estate tax return of the estate of the decedent contained a statement that the trust under the agreement of June 30, 1933, had been treated as a continuation of the trust created by the agreement of December 17, 1927, with no change of interest, parties, or assets. The information return of gifts filed by the trustee for 1933 contained a statement prepared by the decedent's attorney that the second trust was a continuation of the first trust.

### OPINION.

The value of the corpus of the trust was included in the gross estate of the decedent by the respondent upon the grounds that the decedent, having furnished the consideration for the creation of the trust, should be regarded as the grantor thereof; that the transfer was intended to take effect in possession or enjoyment at or after death; that he reserved the income for his life; and that he reserved the power to alter, amend, or revoke the trust.

Petitioner contends that, as the first trust could not be terminated without the consent of the grantor's daughter, the daughter had a substantial interest in the trust, and that her consent to the revocation of the trust "was sufficient justification on the part of Sweeney for turning the corpus over to her" and, having received the property of the trust by their action pursuant to a provision of the trust deed, there was no defect in her title to the assets which became the corpus of the second trust. No other consideration is relied upon.

There is nothing in the record from which to find that relinquishment of the interest she had in the first trust had any bearing upon the delivery of the corpus to the grantor's daughter. The trustee was not in a position to continue as such and the right to terminate the trust and dispose of its assets was exercised by the grantor and his daughter to obtain possession of the estate for the purpose of transferring it to another trust in which their interests would be substantially the same as in the old one. Such intention is indicated by the fact that the new trust, with Alice S. Mergenthaler as the named grantor, was drafted at least three days before the first trust was revoked, and the father was named as life beneficiary of the income of the trust. The father

furnished all of the consideration for the first trust and no other property was placed in the second trust at the time of its creation. We do not think the mere fact of necessity that the daughter consent to the termination of the first trust militates against the fact that the father furnished the trust corpus. The decedent furnished the consideration for the trust and it was not error for the respondent to regard him as the grantor thereof. *Lehman* v. *Commissioner*, 109 Fed. (2d) 99; certiorari denied, 310 U. S. 637; *Estate of Frederick S. Fish*, 45 B. T. A. 120; *Purdon Smith Whiteley*, 42 B. T. A. 316; *Lorenz Iversen*, 3 T. C. 756.

The trust deed authorized the decedent and his daughter to revoke the trust by their written consent and to designate the person or persons to whom the estate should be paid. The value of the assets of the trust is, therefore, clearly includible in the gross estate of the decedent under the provisions of section 811 (d) (2) of the Internal Revenue Code.[1] *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85.

### FINDINGS OF FACT AS TO TRUST OF 1923.

On December 31, 1923, George W. Sweeney transferred certain property to the Third National Bank of Springfield, in trust, with directions to pay one-half of the income in equal shares to Annie M. Sweeney, his wife, and his daughter, Alice S. Mergenthaler, for a period of 20 years. The remaining one-half of the income was to be invested by the trustee under the direction of the grantor. The term of the trust was 20 years, upon the expiration of which the estate was to go to the grantor's wife and daughter, in equal shares, if surviving. If the mother were deceased her share was to be distributed to the daughter, and if she were not living, to the daughter's issue, in a prescribed manner. In the event the daughter and her issue died during the life of the trust, the estate was to pass under the last will of the mother, and in default thereof to the grantor's heirs.

The grantor reserved the power to modify, alter, or revoke the trust in whole or in part and to direct, in such event, the distribution to be made of the trust fund. On October 4, 1924, the grantor directed that

---

[1] SEC. 811. GROSS ESTATE.

\* \* \* \* \* \* \*

(d). REVOCABLE TRANSFERS.—

\* \* \* \* \* \* \*

(2) TRANSFERS ON OR PRIOR TO JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph.

the income of the trust payable to his wife, who was then deceased, be paid to him.

On December 23, 1932, the grantor modified the trust to provide for payment of one-half of the income to himself and his daughter in equal shares until December 31, 1943, provided that, if either should die during such period, his or her share should be paid to the survivor. If the survivor should die within such period, the one-half of the income of the trust was payable to the issue of the daughter and their issue, and if no such issue, according to the last will of the daughter, and in default of such testamentary disposition, to those who would be entitled to the estate of the daughter in the event she died intestate. Upon the expiration of the 20-year period the trust estate was to go to the daughter, if living, if not, to her issue, and if no issue, in accordance with her last will. The trust was further modified to authorize the grantor and his daughter, acting together, to modify or abrogate the trust and direct the distribution to be made of the property. Upon the death of the daughter, the power could be exercised by the grantor and any beneficiary who was not also a trustee.

On October 28, 1937, the trust was again amended to provide for the payment of all of the income of the trust in equal shares to the grantor and his daughter during the lifetime of the grantor; also to provide that upon the death of either the income was payable to the survivor. Upon the death of any such survivor prior to December 31, 1943, the net income was to go to the issue of the daughter, and if none, in accordance with her last will, and if she died without a will, then to those who would take if she died intestate. The trust was to terminate December 31, 1943, or upon the death of the grantor, whichever occurred last. Upon such termination the trust property was to go to the daughter, if living; if not, to her issue in equal shares, and if there were no issue, then as provided in her last will, and if she made no such testamentary disposition, then to those entitled to take if she had died intestate.

### OPINION.

The trust was originally subject to revocation and modification by the grantor, acting alone. Had there been no modification of this reserved power, upon the death of the settlor, the value of the trust corpus would have been includible in his gross estate for estate tax purposes as a transfer intended to take effect in possession or enjoyment at or after the grantor's death. *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339; *Porter* v. *Commissioner*, 288 U. S. 436. The power was altered on December 23, 1932, so as to require the concurrence of the grantor's daughter, and, after her death, the consent of any beneficiary who was not a trustee. Prior to this alteration of the trust deed, pro-

visions were inserted in revenue acts for inclusion in the gross estate of a decedent of the value at the time of his death of any interest in property "with respect to which he has at any time created a trust, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke * * *." Sec. 302 (d), Revenue Acts of 1924 and 1926, and sec. 811 (d) (2), Internal Revenue Code.

The Revenue Act of 1926 was in effect when the amendment in question was made and was notice to the decedent of its provisions. Complete cancellation in December 1932 of the power to revoke or amend the trust would have subjected the transfer to gift tax under the Revenue Act of 1932. *Burnet* v. *Guggenheim*, 288 U. S. 280.

The amendment of the trust having been made after the revenue acts had provided that revocability by the trustor in conjunction with another person required inclusion of trust corpus in gross estate, such acts apply. *Helvering* v. *City Bank Farmers Trust Co.*, 296 U. S. 85. Therein, the Court, speaking of section 302 (d) of the Revenue Act of 1926, says: "Subsequent to the passage of that act, the creator of a trust estate saw fit to reserve to himself jointly with [another] * * * the power of revocation" and "the transaction should be deemed to be testamentary in character." That herein the original trust instrument had been executed before the acts here involved does not conceal the fact that after the effective dates of such acts, he entered into a "transaction" reserving to himself and another such power as the then law designated sufficient basis for estate taxation.

The petitioner argues, however, that the fact of original creation of the trust prior to the passage of such legislation prevents the application thereof. The original trust was, however, revocable by the trustor and the transfer was therefore incomplete and subject to later legislation. *Reinecke* v. *Northern Trust Co.*, *supra; Chase National Bank* v. *United States*, 278 U. S. 327; *Bullen* v. *State of Wisconsin*, 240 U. S. 625. Revocability of the trust by the grantor left the transfer "inchoate and imperfect," so far as the gift tax law is concerned, and it is in *pari materia* with that of estate tax. *Burnet* v. *Guggenheim*, *supra*. The legislation beginning with section 302 (d) of the Revenue Act of 1924 therefore applies, and when the decedent died in 1940 the trust corpus was a part of his gross estate, under section 811 (d) (2) of the Internal Revenue Code.

The case of *Frances A. Krause*, 32 B. T. A. 254, cited by petitioner as seeming to require inclusion of only one-half of the trust property in the gross estate, is distinguishable. There, the trust was irrevocable and the grantor retained a one-half interest in the corpus and income of the trust.

*Decision will be entered for the respondent.*